# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| VERONICA GLOVER | CIVIL ACTION NO. 09-978 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| VIRGINIA HESTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment (Record Document 54) filed by Plaintiff Veronica Glover and a Motion for Summary Judgment (Record Document 55) filed by Defendants, Virginia Hester, in her individual capacity and her official capacity as Clerk of the Shreveport City Court, and Shreveport City Court Judges Lee Irvin, Charles Kelly, Randy Collins, and Pammela Lattier, in their official capacities.

For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**.

## FACTUAL BACKGROUND

Veronica Glover ("Glover") began working for the Shreveport City Court in 1998 as a deputy clerk in the criminal division. [Complaint at ¶6].  Glover alleges that on July 2, 2007 and July 17, 2007, she complained to the City of Shreveport Personnel Department that she was being discriminated against by Clerk of Court, Virginia Hester because of her race.  [Complaint at ¶7].  Glover contends that the City Personnel Department declined to investigate and advised her to file her complaint with the Chief Judge of the Shreveport City Court, which she did on October 1, 2007. [Complaint at ¶8].  According to Glover, her

complaints of discrimination prompted Virginia Hester, a Caucasian who was the Clerk of Court, to retaliate against her by: "mocking Glover . . . ; increasing Glover's work load to a level impossible to complete in the time allowed; micro-managing Glover's work; imposing conditions of employment upon Glover that were not imposed on her co-workers; soliciting complaints about Glover from employees and City Court patrons; threatening to terminate Glover's employment without cause; making derogatory statements to Glover about Glover for the purpose of causing Glover extreme emotional distress." [Complaint at ¶10].  Glover took time off of work under the Family Medical Leave Act in April 2008.  [Complaint at ¶11].

 Further, Glover alleges that after she returned to work in April 2008, Hester again harassed her. [Complaint at ¶11].  Glover contends this harassment culminated in her being terminated without cause. [Complaint at ¶¶11-12].

The incident that gave rise to Glover's discharge is recounted by Angela Clay, the co-worker who was verbally assaulted by Glover, in her deposition (the video tape was not presented to the Court for its review). See Record Document 55-6 at 86.  According to Clay, she was standing in the fax/file room waiting for a fax to come through on the fax machine and Glover came in and reached in front of Clay. [Record Document 55-6 at 79].  Clay said to Ms. Glover that she needed "to say excuse me or something." [Record Document 55-6 at 79].  At that point the altercation began:

> Yeah.  And you got to learn not to be so rude, because that was totally rude.  And she [Glover] turns on her heels and say, bitch, you don't know who you fucking with, I'll whoop your ass. I'm like, whoa, you won't be whipping my ass.  She say, you don't know who you fucking with.  I'll whoop your ass.  We'll tear this mother–I'm sorry.  We'll tear this mother fucker up in here.  We'll both catch a charge you'll lose your job.

And, you know, I said this girl's crazy, to myself, you know, whatever.  I said, yeah, and that's when I told her, you need to get out of my face, you know, just move and get out of my face, because I was trying to do my work.  And that's when she said, bitch, your breath stink.  Get your teeth fixed, bitch.  Bitch, your breath stink.  And she said that about, I don't know how many times, trying to taunt me I guess.  And that's when I told her again, you know, you just need to shut up talking to me.

So as I was trying, turning to leave out of the room to go put the fax material up, for Mr. Flanagan, she says something about your mammy, which is a very off color statement to use referring to someone's mom.  Something about your mammy something.  I don't know exactly what she said because at that point she really pissed me off.

So she said your mammy something, I don't know what she said, and it kind of touched a button because my mom's deceased and a couple of days away from her birthday, and so I was pissed off at that time, so I did say something vulgar to her, and I know I go to say what I said, don't' want to say it but I know--I've been told I have to say it.

And that's when I made the ugly comment of you can, I think I told her you can either eat out of my ass and out my pussy, I'm sorry
. . .
And then she said, bitch--you know, again, she repeated, bitch, you don't know who you fucking with.  You don't know who you fucking with, get your mouth fixed, bitch.

So I just shook her off at that point and went to my desk because it was time to go pretty much.  And she still, she still mouthing something on about, I don't know what all she was saying then. You could just, she was just motioning with her body, saying craziness about, you don't know who you fucking with and you can take that to the bank and all kind of crazy nonsense she was saying.
. . .
So during the time I was trying to retrieve my faxes, a man came in and needed help.  Well, Veronica was busy messing around with me, you know, trying to aggravate me or whatever she was trying to do, because I felt that she tried to draw me into an altercation, a physical altercation, and she thought she wanted that but she didn't.  But anyway, I felt she was trying to

> draw me into that, and Christy, because Veronica was ignoring
> the guy at the counter, which she should not have done, got up
> to help the guy at the counter.

[Record Document 55-6 at 80-83].[1]  After the altercation, Clay filed a complaint.  Id.  Hester

investigated the incident and fired Glover. [Record Document 55-4 at 29].  Subsequent to

that the four judges met, reviewed the tape of the incident and voted two (2) to two (2) to

reinstate Glover. [Record Document 88-2 at 22].  Glover was not reinstated.

Glover alleges claims under Louisiana law and federal law.  See Complaint and First

Amended Complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[2]  Quality Infusion Care, Inc. v. Health Care Serv.

Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010).  "Rule

56[(a)] mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant

demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go

---

[1]The Court notes with a passing nostalgia the days when civility reigned and such vulgar language was never uttered in polite company or even heated discussions.  Alas, it seems those days have long since past.

[2]The Court notes that the newly amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

**Procedural Due Process**

"Glover alleges her employment was terminated in violation of a state law applicable to procedural due process, LA. CONST. art I, § 2 and the Fourteenth Amendment to the United States Constitution." [Record Document 54].  Glover contends "the Defendant Judges and Hester violated constitutional rights affecting Glover's continued employment as a deputy clerk of the City Court by failing to provide Glover, prior to her termination, an explanation of the evidence against her and an opportunity to defend herself against the charge that she was involved in an altercation with Ms. Clay." [Record Document 54 at 2].  Plaintiff does not contest the fact that she is an unclassified state employee.  See Record Document 72 at 5.  Instead, Plaintiff argues, "Louisiana clearly recognizes a protected property interest in public employment arising from a mutual agreement between the employer and the employee." [Record Document 72].

To state a Fourteenth Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001). To enjoy a property interest in employment, an employee must "have a

legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law . . . " Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Plaintiff and Defendants cite to Tolliver v. Concordia Water Works District No. 1, 735 So.2d 680 (La.App. 3d Cir.1999), as support for their respective position on the due process issue that Glover had an expressed or implied right to continue her employment unless she violated her employer's rules and regulations. See Record Documents 54 and 55. The Plaintiff in Tolliver argued that he had a property interest arising out of rules or mutually explicit understandings of regulations, policies, and procedures of his employer. Tolliver, 735 So.2d at 683. The Court in Tolliver examined the implication of Louisiana's presumption of "at-will" employment against the United States Supreme Court decision in Board of Regents v. Roth, 408 U .S. 564, 92 S.Ct. 2701 (1972), which provides that due process protection of property interests may be created by an independent source, such as state laws, or by understandings that secure certain benefits and that support a claim of entitlement to those benefits. See Roth, 408 U.S. at 577.

Louisiana defines "at-will" employment as that which is terminable at the will of either the employer or the employee. Tolliver, 735 So.2d at 682; citing to Williams, 416 So.2d at 638. "Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." Id.

The Court in Tolliver recognized that in some instances the facts will demonstrate that a particular employer adopted rules and regulations that caused its employees to expect continued employment absent certain transgressions. See Tolliver, 735 So.2d at

684. However, the Tolliver Court noted that this expectation must be more than unilateral; it must be mutual between the employee and the employer to create a protected property interest. See id.

> An employee's abstract concern or desire to be treated "fairly" and "reasonably" in being terminated will not defeat summary dismissal of his complaint. Instead, he must present some evidence to overcome the "at will" presumption, i.e., evidence tending to show the employer intended, expressly or impliedly, by adoption of certain rules, regulations, or policies to grant him the right to continued employment subject to certain conditions or certain specific understandings exist[ing] between he and the employer sufficient to cause him to reasonably expect such employment.

Id.

When Glover began working for the City Court of Shreveport she signed an "Employee Acknowledgment of Receipt" which acknowledged that she had received a copy of the Shreveport City Court Employee Handbook. [Record Document 55-5 at 76].  In addition this acknowledgment stated:

> I understand that nothing in this document should be construed as creating any entitlement to any process described or in any way changing the "at-will" nature of non-classified employment. I further understand that I am free to resign from my position with the Court at any time, just as the Court is able to terminate my employment at any time.  I understand that this is not a contract of employment.

[Record Document 55-5 at 76].

Both parties agree "termination is at the will of the appointing authority, provided no restraint has been placed on his power." [Record Document 88 at 7].  The parties agree that Hester was delegated the power to hire and fire employees.  Id.  Thus, she was the appointing authority.  Id.  However, Plaintiff contends the Judges "conditioned that authority upon a requirement that dismissal be only for cause."  Id. at 8.

To support her assertion of a mutual understanding of a cause requirement for discharge, Plaintiff presents this Court with the selected deposition testimony of Judge Kelly, Judge Collins and Marilyn Smith, the Assistant Court Coordinator.  According to Judge Kelly "the City's position is she's an at-will employee of the city courts.  But then, you know, these notes, and this is the way we've always done it.  We just don't fire people.  Dismiss for cause, that has been . . . ." [Record Document 54-3 at 2].  Judge Collins in response to a question from Plaintiff's attorney affirmed that Glover had a continued expectation of employment unless some kind of just cause for termination of her employment arose. [Record Document 54-3 at 5].  Marilyn Smith added that she expected Glover to have been able to answer the charges that led to her dismissal. [Record Document 54-3 at 9].  Finally, Plaintiff provides this Court with an e-mail from Joseph Lundt, an employee in the Personnel Department of the City Shreveport, providing advice on whether Glover could be terminated for comments made about Shreveport City Marshall Charlie Caldwell.  See Record Document 88-2 at 32.  Specifically, Lundt states:

> [s]o far as terminating Ms. Glover, the foremost consideration, in my opinion, is that she is an at-will employee of the city courts, and as such may be dismissed as any at-will employee, which does not require there to be cause for such dismissals. I believe the practice at city courts for some time, however, has been to dismiss for cause.

[Record Document 88-2 at 32].

Louisiana statutes and a signed employment agreement all reinforce Hester's contention that Plaintiff was merely an at-will employee and there was no mutual understanding of more.  The Court has read the Shreveport City Court Employee Handbook and its approach places the Judges' comments in context and explains the

8 of 25

general statements about cause that the Judges, Smith and Lundt referenced.  On page

seven (7) of the handbook is found the Court's disciplinary procedures and unacceptable

conduct. [Record Documetn 55-5 at 13-18].  At the end of the list of unacceptable conduct,

the handbook notes:

> [h]owever, the above actions do not alter the Court's at-will
> employment policy.  Disciplinary action is sometimes used as
> a means to simply advise an employee of inappropriate
> behavior and may be used as an attempt to improve an
> employee's performance.  Discipline should be viewed as a
> pro-active means and a positive process to change an
> employee's behavior.  The Judicial Administrator may opt to
> use the following policy for disciplinary action, but is not
> obligated to do so.
> . . .
> The above policy does not preclude the Court, as an at-will
> employer, from terminating an employee at any time, without
> regard to the preceding steps.

[Record Document 55-5 at 17-18].

However, taking the Judges' statements, Smith's statement and Lundt's e-mail in

consideration with the City Court of Shreveport Employee Handbook, the Court finds that

a genuine dispute of material fact exists as to whether or not a mutual understanding

existed that creates a for cause requirement for dismissal.  Therefore, Plaintiff's Motion for

Partial Summary Judgment on this issue should be denied and seeing a dispute of material

fact, Defendants' Motion for Summary Judgment on this issue should be denied as well.

**First Amendment Retaliation**

According to Glover, she "engaged in two acts of protected speech: (1) she made

a public statement about a candidate for political office and (2) she submitted a written

complaint of commercial activity in the City Court." [Record Document 88 at 16].

To establish a § 1983 claim for employment retaliation related to speech, Glover must show: (1) she suffered "an adverse employment action," Alexander v. Eeds, 392 F.3d 138, 142 (5th Cir.2004); (2) she spoke "as a citizen on a matter of public concern," Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006); (3) her interest in the speech outweighs the government's interest in the efficient provision of public services, Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and (4) the speech "precipitated the adverse employment action." Eeds, 392 F.3d at 142.

Recently the Fifth Circuit in Harris ex rel. Harris v. Pontotoc County School District reaffirmed the Court's standard for evaluating retaliation under the First Amendment:

> The First Amendment protects a public employee's speech in cases of alleged retaliation only if the speech addresses a matter of "public concern." Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether speech is of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147–48, 103 S.Ct. 1684. "Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee." Terrell v. Univ. of Tex. Sys. Police, 792 F.2d 1360, 1362 (5th Cir.1986). Rather than looking at whether the public might or would have an interest in the matter, the court examines whether the speaker's motivation was to speak primarily as a citizen or as an employee. Dodds v. Childers, 933 F.2d 271, 273 (5th Cir.1991). In cases of mixed speech or motives, "the speaker must have spoken predominantly 'as a citizen' to trigger First Amendment protection." Id. at 274 (citation omitted). If the speech is not of public concern, we do not question the employer's motivations for taking action against the employee. Id. at 273.

– F.3d –, 2011 WL 814972, *5 (5th Cir. 2011).

### i.    Political Speech

Glover alleges:

> In April 2008, shortly before she [Glover] went on Family
> Medical Leave, Glover stood at the security desk in the
> entrance to the City Court and discussed with Deputy Marshal
> Isaac Brass the news that Deputy Charlie Caldwell had been
> appointed interim City Marshal.  Ms. Glover was not acting in
> her capacity as a deputy clerk.  She was talking to a friend.
> Glover and Brass discussed whether or not Interim Marshal
> Caldwell was a "dope dealer" or "dope user."  Glover told Brass
> about things she had heard about Caldwell's drug use.

[Record Document 88 at 16] (internal citations omitted).  Glover alleges that this interaction

was recorded and played for Marshal Caldwell, who in turn complained.  Id. at 17.  The

record supports that Hester attempted to terminate Glover while she was on FMLA leave

and use the "Caldwell comments" as a basis for her termination. [Record Document 88-2

at 11].  However, Glover was not terminated during her FMLA leave or upon her return from

FMLA leave.  Instead, she was counseled by Hester upon her return about making

derogatory statements about other personnel. [Record Document 88 at 18].

Plaintiff strenuously argues "these e-mails [the e-mails between City Court Staff and

the Personnel Department of the City of Shreveport discussing the feasibility of terminating

Glover for her comments about Marshal Caldwell] alone establish disputed issues of

material fact as to whether or not Glover's statements about Caldwell was also a motivating

factor in Hester's decision to fire Glover in January, 2009." Id.

Applying the factors for retaliation, this Court finds that Plaintiff suffered an adverse

employment action when she was terminated from the City Court on January 16, 2009.

[Record Document 88-2 at 28].  The Court finds that when Plaintiff made the alleged

comments she was engaged in a private conversation with a friend and not acting in the

course of her official duties.  In regards to the third element of whether her interest in the speech outweighs the government's interest in the efficient provision of public services, the Court must pause.  No evidence has been presented to this Court that Marshal Caldwell has used drugs or sold drugs.  The Court fully understands that if a law enforcement agent such as Marshal Caldwell were involved in such illegal activities then this type of information is truly of public concern and the exposure of such actions greatly outweigh the efficient provision of public services.  However, Glover's comments seem more akin to idle office gossip than a whistle blower exposing malfeasance.  Nevertheless, upon balancing Glover's interest in the speech and out of an abundance of caution, the Court will assume that Glover's interest in the speech outweighs the government's interests.

However, Glover's claim of retaliation must fail on the final prong that her comments precipitated the adverse employment action.  Plaintiff was indisputably terminated on January 16, 2009.  From this Court's review of the record, Glover made her comments sometime in April 2008.  The evidence as presented from Glover shows that Marshal Caldwell was made aware of the comments shortly thereafter.  Hester's research into terminating Glover on those grounds is corroborated by the e-mail from the Personnel Department of the City of Shreveport dated May 20, 2008. [Record Document 88-2 at 11]. Glover returned from FMLA leave on July 23, 2008. [Record Document 88-1 at 26].  There was approximately nine months between Glover's comments and her termination.  From this Court's review, Plaintiff's discharge was not precipitated by her comments about Marshal Caldwell.  See infra p. 17.  The nine month delay severs any causal connection. Consequently, Defendants are entitled to summary judgment on this issue.

ii.     **Complaint for Commercial Activity**

Glover argues:

> Ms. Hester was sufficiently informed of the content of Ms.
> Glover's complaint to HR to know that Glover had accused her
> of selling shoes on City Court time.  Hester was also aware of
> Glover's allegations that other Court employees were engaged
> in private commercial activities on City Court time.   In an
> exchange of e-mail communications between Assistant Court
> Administrator Marilyn Smith and City Personnel Analyst
> Angelita Jackson, Ms. Smith stated that she had discussed Ms.
> Glover's discrimination complaint with Ms. Hester.   Hester
> conceded that after Glover wrote her complaint letter, Hester
> issued a memo asking Court employees not to handle private
> cash transactions on Court time.

[Record Document 88 at 20] (internal citations omitted).

This Court has reviewed the evidence submitted on this issue.  From this Court's
review, on June 27, 2007, Plaintiff was accused of conducting personal business on City
Court time. [Record Document 55-6 at 54].   Subsequently on July 2, 2007, Plaintiff
submitted a complaint of racial harassment and discrimination with the City of Shreveport
alleging that she was being specifically targeted and that other members of the City Court
routinely conducted personal business on City Court time and engaged in private ventures
on City Court time.  Specifically she stated "I want to address the issue of why I am the only
person being targeted; because there are several individuals including Ms. Hester that has
conducted outside business while at work between 8am-5pm while on City time." [Record
Document 55-6 at 54].  Glover supplemented this complaint on July 17, 2007. [Record
Document 55-6 at 56].  Also during this time period, she became represented by counsel
who filed a formal complaint on her behalf on August 2, 2008. [Record Document 55-6 at
33].  Also, Plaintiff submitted a complaint of retaliation and discrimination with the Louisiana

Commission on Human Rights and the EEOC on October 1, 2007. [Record Document 55-6 at 53].

Plaintiff argues that her termination on January 16, 2009 was motived by her filing of these complaints which accused many employees of the City Court of conducting private business transactions on City Court time.

Turning to the elements for retaliation for speech, the Court accepts that an adverse employment action took place on January 16, 2009 when Glover was terminated from the City Court.  The Defendants argue that Plaintiff's filing of discrimination complaints merely involved private employment interests.  See Record Document 55.  This Court agrees with the Defendants, but out of a sense of caution and realizing that Plaintiff's complaint implicates the misuse of government time and salaries the Court will find that Plaintiff's complaint, even though self-serving because she engaged in private business on City Court time herself, is a matter of public concern.  The Court finds her interest in speech outweighs the City Court's interest in the efficient provision of services.  However, it is on the final prong the Plaintiff's claim must fail.  Plaintiff made her allegedly protected speech on July 2, 2007.  There is no dispute that Defendants were made aware of that complaint shortly thereafter.  However, Plaintiff was not discharged until January 16, 2009, over a year and a half after the complaint was filed.  See infra p. 17.  While the Court is sensitive to the possibility of retaliation, the amount of time between the filing of the complaint and the adverse employment action seem to disprove any notion that her allegedly protected speech precipitated her termination.

Finally, even if the Court were to assume for arguments sake that Plaintiff presented a *prima facie* case of retaliation for Glover's exercise of her First Amendment right to free

speech (the comments about Marshal Caldwell and/or the complaint about commercial activity), Plaintiff's claims would fail because Glover has failed to show that the City Court's decision to terminate her was based on her allegedly protected speech.  Instead, the Plaintiff was terminated because of the altercation that she had with a colleague and her troubled work history.

Therefore, Plaintiff's First Amendment claims must fail and Defendants are entitled to summary judgment on this issue.

**Claims Based on Race**

According to Defendants, "race had nothing to do with the termination of Glover's employment" and thus they move for summary judgment on Plaintiff's claims that her discharge was a result of discrimination or retaliation based on race. [Record Document 55-1 at 24].  "At the heart of these claims is her assertion that she suffered discrimination on the basis of her race." [Record Document 55-1 at 24].

From this Court's review of the Complaint, First Amended Complaint and briefs, Plaintiff alleges three claims based on race: (1) her termination was based on her race in violation of 42 U.S.C. § 1983, (2) retaliation in violation of 42 U.S.C. § 1981 and (3) retaliation in violation of Title VII.

### i.    Discriminatory Discharge

The summary judgment test for discrimination claims under § 1983 is the same as the test for discrimination claims under Title VII. See Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 342 (5th Cir. 2002). A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination, though "[b]ecause direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in

McDonnell Douglas." Portis v. First Nat'l Bank of New Albany, 34 F.3d 325, 328 (5th Cir.1994). Analysis under the well-established McDonnell Douglas framework proceeds as follows: (1) the plaintiff must first establish a *prima facie* case of discrimination; (2) the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment action; and if that burden is satisfied, (3) the plaintiff must offer evidence that the proffered reason is a pretext for racial discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To establish a *prima facie* case, Glover must show that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated. See Rutherford v. Harris County, 197 F.3d 173, 184 (5th Cir.1999).

From this Court's review of all of the evidence before it, Glover cannot establish a *prima facie* case of discrimination.  There is no dispute that Glover is an African American female and thus a member of a protected class.  Secondly, there is no argument that Plaintiff was qualified for her job as a Deputy Clerk at the City Court of Shreveport, a position she held from 1998 to the time of her discharge in 2009. See Complaint.  No one disputes that she suffered an adverse employment action when she was terminated on January 16, 2009.  However, Plaintiff has not presented this Court with anyone else who was similarly situated and treated more favorably.  Plaintiff has not come forward with any evidence to indicate that another clerk engaged in a verbally abusive confrontation with a

co-worker and was not terminated.  Without presenting the Court with a comparator or more, Plaintiff's claim for discriminatory discharge must fail.[3]

### ii.    Retaliatory Discharge[4]

Retaliation claims are also subject to the McDonnell Douglas framework.  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  "To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007).

For purposes of a *prima facie* case, the timing of the adverse decision and its proximity to protected activity can establish an inference of causal connection. Gee v. Principi, 289 F.3d 342, 346 n. 3 (5th Cir.2002); see also Evans v. City of Houston, 246 F.3d 344, 356 (5th Cir.2001) (five day proximity can establish *prima facie* evidence of causal connection for retaliation claim).  The Court is dubious of Glover's claim.  Glover filed her complaints with the City of Shreveport and the Louisiana Commission on Human Rights and the EEOC in the latter part of 2007.  She was not discharged until January 2009.  Nevertheless, out of an abundance of caution, this Court assumes *arguendo* that Glover therefore established a *prima facie* case of retaliatory discharge by alleging her discharge occurred after she filed claims for discrimination against the City Court of Shreveport.

---

[3]The Court notes for the record that even if Plaintiff successfully presented a *prima facie* case of discrimination, Plaintiff's claim would still fail because no evidence has been presented to rebut the legitimate non-discriminatory reason for her termination.

[4]The standard of proof for Title VII discrimination claims also applies to § 1981 claims, Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 n. 2 (5th Cir.1999).

Once an employer produces evidence of a valid reason for the adverse action, however, the Fifth Circuit's decision in Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007), makes clear that a plaintiff cannot rely solely on suspicious timing to carry his burden at the pretextual stage of the burden-shifting framework. In the face of evidence of a non-retaliatory reason for the adverse action, a plaintiff must show that retaliatory motives were the "but-for cause" of that action. Id.

Glover's claim fails under this analysis. The City Court of Shreveport has produced all of Veronica Glover's evaluations from 2002 until her discharge in 2009. [Record Document 55-5 at 77-114]. These evaluations, before any type of complaints of discrimination were filed, show a worker who is contemptuous of authority, confrontational with co-workers, displays a negative attitude toward work and historically tried to brow beat supervisors with claims of unfair treatment. One performance review from April 2004 gives this Court pause because her supervisor, Rebecca Payne, an African-American, states "I am still of the opinion that this employee could be an asset to the Court system if she realizes that we are here to work from 8:00 AM to 5:00 PM. This employee is only addressed when it is job related. There is sometimes hesitation to do that because of complains [sic] of being treated unfairly." [Record Document 55-5 at 94]. In 2002, Glover was counseled because "[c]o-workers were complaining about being confronted by Veronica Glover concerning complaint that she had been written up on 6/18/2002. Co-workers felt intimidated." [Record Document 55-6 at 81]. Joan Howard, another African-American supervisor, in 2004 also reported an incident with Glover. [Record Document 55-6 at 58]. According to Howard, "I approached Veronica Glover to ask a question and she had a very insubordinate attitude. This is not the first time I have experienced an attitude

from Mrs. Glover.  This employee seems to have no respect for authority and I suggest that if this employee continues to exhibit this type of attitude that she should seek employment where this kind of behavior is tolerated.  I believe this employee is corrupt and if this behavior is allowed to continue I believe she will corrupt other employees as well." Id.

The Court notes that Glover's former supervisor, Rita Jackson, a Caucasian female, made two racially insensitive comments and took photos of African-Americans delivering lunches to the African-American employees of the City Court.  For purposes of this motion, this Court assumes these allegations are true.  Regardless, they are immaterial to Glover's claims.  Hester made the ultimate decision to terminate Glover.  Glover has failed to come forward with any evidence showing racial animus on Hester's part to contradict the legitimate non-discriminatory reason forwarded for her termination.

**Retaliation Pursuant to La. R.S. 51:2256**

"As a matter of law, Glover has no claim for unlawful employment discrimination pursuant to Louisiana law." [Record Document 55-1 at 15].  Plaintiff argues that "[i]f the Court were to accept the Defendant's argument, the result would be to restrict the authority of the LCHR [Louisiana Commission on Human Rights] to investigate only those practices declared unlawful by this chapter." [Record Document 88-1 at 13].  This Court has ruled on this very issue twice before and found no state law claim for retaliation resulting from employment discrimination.  Specifically, this Court found:

> Plaintiffs' complaint invokes the Louisiana Human Rights Act found in Title 51 of the Louisiana Revised Statutes, specifically La. R.S. 51:2232, et seq. Plaintiffs invoke Section 2256 of the Title and its ban on retaliation against a person who has opposed a practice declared unlawful by that Chapter. The statute also makes it unlawful to aid or abet a person to engage in practices declared unlawful by the Chapter. The

movants argue that certain legislative changes have resulted in Section 2256 no longer providing Plaintiffs a cause of action related to employment discrimination or retaliation.

The Louisiana Legislature, in 1997, repealed significant portions of the Act that were found in the relevant chapter of Title 51 and consolidated most employment discrimination laws in the Louisiana Employment Discrimination Law, found in Title 23. Title 23 does not contain a retaliation provision. Courts have since been divided as to whether Section 2256 any longer provides a cause of action. Judge Hicks recently sided with Smith v. Parish of Washington, 318 F.Supp.2d 366 (E.D. La. 2004) and dismissed a retaliation claim brought under Section 2256. LaCaze v. W. W. Grainger, Inc., 2005 WL 1629936, *4 (W.D. La. 2005). The first (and, thus far, only) Louisiana state court to speak to the issue in a published opinion was also persuaded by Smith. It held that Section 2256 no longer provides a viable cause of action to employment discrimination plaintiffs. Lowry v. Dresser, Inc., 893 So.2d 966 (La. App. 3d Cir. 2005). Based on those authorities, it is recommended that any retaliation or other claim based on Section 2256 be dismissed.

McCarty, et al v. Southland Builders & Associates, Inc., et al., No. 05-0497, Report and

Recommendation at 2-3 (W.D. La. Sept. 13, 2005, adopted by Hicks, J. on Oct. 11, 2005).

 Prior to this ruling, this Court similarly found:

that Title 51 of the Louisiana Revised Statutes does not provide a cause of action for disability discrimination or retaliation. Smith v. Parish of Wash., 318 F.Supp.2d 366 (E.D. La. 2004). The Smith court, acknowledged "that the absence of a broad anti-retaliation provision in the employment discrimination context is regressive social policy and illogical." Id. at 373. However, the court ultimately found that in the 1997 revisions, the Louisiana legislature removed employment discrimination claims from Title 51 in order to consolidate all employment discrimination statutes under Title 23. Id. Although Louisiana law now only provides retaliation claims in cases of age and sickle cell discrimination, the Court agrees with the reasoning in Smith. Therefore, plaintiff's claims under Title 51 are dismissed.

LaCaze v. W.W. Grainger, Inc., 2005 WL 1629936 (W.D. La. 2005).  Plaintiff has offered this Court no controlling cases that have departed from this approach.  This Court's independent review shows this approach is still accepted.

Therefore, Plaintiff has no cause of action for retaliation under Louisiana law, and the Defendants are entitled to summary judgment and Plaintiff's state law claims should be dismissed.

**Family Medical Leave Act**

The Family Medical Leave Act ("FMLA") provides eligible employees up to twelve weeks of unpaid leave in any twelve-month period for personal medical conditions or to attend to familial obligations, such as caring for a loved one who has a serious health condition. 29 U.S.C. §§ 2612, 2615. The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]," 29 U.S.C. § 2615, and the Act provides for a private right of enforcement, 29 U.S.C. § 2617(a). The primary aim of the FMLA is "to balance the demands of the workplace with the needs of families ... in a manner that accommodates the legitimate interests of employers...." 29 U.S.C. § 2601(b)(1) & (3). To effectuate this aim, Congress exempted "small employers," defined as employers with fewer than fifty employees. 29 U.S.C. § 2611(4)(A).        The "FMLA ... protects employees from retaliation or discrimination for exercising their rights under the FMLA." Mauder v. Metro. Transit Auth. of Harris Cty., 446 F.3d 574, 580 (5th Cir.2006).

The Fifth Circuit applies the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when analyzing retaliation claims under the FMLA.   Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th

Cir.2001) (citation omitted). To make a *prima facie* case for retaliation under the FMLA, a plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that he was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because he took FMLA leave. Id.; Wilson v. Noble Drilling Services, Inc., 2010 WL 5298018 (5th Cir. 2010).

Once an employee succeeds in making a *prima facie* case, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the employment action. Id. "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quotation omitted). After the employer has done so, the employee must show by a preponderance of the evidence that the employer's reason is a pretext for retaliation. Id. at 143. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [engaged in retaliation]." Id. at 148. Upon such a showing, summary judgment for the employer is appropriate only if there are unique circumstances that would preclude the trier of fact from finding for the plaintiff. See id.

Glover argues that "Virginia Hester discriminated against and retaliated against Glover in whole or in part because Glover had taken Family Medical Leave." [Complaint at ¶ 59].  To support this claim, Plaintiff responds to Defendants' Motion for Summary Judgment with this brief response regarding her FMLA claim:

> The email communications between Assistant Court
> Administrator Marilyn Smith and the City of Shreveport
> personnel department establish that Ms. Hester tried to fire

Glover while Glover was on Family Medical Leave. Ms. Hester went so far as to have her assistant draft a dismissal letter. When the personnel analyst reviewed Glover's personnel file, she noted many email communications about Glover that had been dropped into Glover's personnel file but never reviewed with Glover. This appears to have been one of the reasons Hester did not fire Glover while Glover was on leave. Instead, she transferred Glover to the civil department, where Glover had never before worked.

Even Hester conceded that there were vast differences between the civil and criminal division.  But aside from having to learn an entirely new set of skills, Glover was placed at a desk under a surveillance camera, denied the office supplies she needed to do her job, and under the scrutiny of supervisors. All of these facts create a reasonable inference that the termination of Glover's employment in January, 2009, was connected to Glover's leave.

[Record Document 88 at 14-15].

Upon review of the record and the uncontested facts, this Court finds it is uncontroverted that Plaintiff exercised her rights under the FMLA and took leave from work from May 8, 2008 until July 23, 2008. [Record Document 88-1 at 26].  It is also undisputed that upon returning from her FMLA leave she was transferred to the Civil Division from the Criminal Division.   Her salary and designation remained unchanged.   It is further undisputed that after an altercation on January 14, 2009 with a co-worker, Angela Clay, her employment was terminated.

Initially, this Court will admit that it is dubious that Plaintiff has established a causal connection between her discharge and her exercise of her rights under the FMLA.  From this Court's math, there was a five month window between the two events and that time seems to have broken the causal chain between the exercise of those protected rights and her adverse employment action.  However, out of an abundance of caution and for the

purposes of this motion only, this Court will assume that Plaintiff has successfully plead a *prima facie* case of retaliation under the FMLA.

Defendants have come forward with a legitimate non-discriminatory reason for Glover's discharge–her employment record and the altercation with a co-worker on January 14, 2009.  The Court is satisfied that their proffered reason is legitimate.  Plaintiff has failed in her attempt to present this Court with evidence that the proffered reason was pretext for retaliation.  There is nothing in the record to suggest that the Defendants terminated Glover's employment because she exercised her rights under the FMLA.  Plaintiff points to a set of e-mails that indicate Hester was seeking a way to terminate Plaintiff while she was on FMLA leave.  However, no such termination took place while Plaintiff was on FMLA leave or when she returned from FMLA leave.  Instead, Plaintiff was discharged five months later as a result of an altercation with a co-worker.  As a result, Defendants are entitled to summary judgment on this issue.

## CONCLUSION

This Court notes that this ruling leaves this matter on a unique procedural footing.  As this ruling makes clear genuine disputes of material fact exist as to whether or not Plaintiff was an at-will employee who could be terminated at any time or an employee entitled to procedural due process before being terminated.  Therefore, this particular issue is left to the trier of fact.  This ruling merely speaks to the procedure and mechanics of Plaintiff's discharge and not the substance.

Furthermore, this Court's review of the substance of Plaintiff's discharge reveals that Plaintiff's general claims for discriminatory discharge and retaliation must fail as a matter of law.  However, the Court finds it necessary to state it finds nothing incongruous with its

rulings.  The procedural due process claims is separate and apart from the substantive claims of discrimination.

Accordingly,

**IT IS ORDERED THAT** Plaintiff's Motion for Partial Summary Judgment [Record Document 54] be and is hereby **DENIED.**

**IT IS FURTHER ORDERED THAT** Defendants' Motion for Summary Judgment [Record Document 55] be and is hereby **DENIED** in so far as it pertains to Plaintiff's claim for procedural due process under state and federal law.

**IT IS FURTHER ORDERED THAT** Defendants' Motion for Summary Judgment [Record Document 55] be and is hereby **GRANTED** in so far as it pertains to Plaintiff's claims for discrimination and retaliation pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII, the Family Medical Leave Act and Louisiana state law.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of April, 2011.


_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE