UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| VERONICA GLOVER | CIVIL ACTION NO. 09-978 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| VIRGINIA HESTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Reconsideration filed Pursuant to FRCP 60(b) [Record Document 105] filed on behalf of the Defendants, Virginia Hester, in her individual capacity and her official capacity as Clerk of the Shreveport City Court ("Hester"), and Shreveport City Court Judges Lee Irvin, Charles Kelly, Randy Collins, and Pammela Lattier, in their official capacities ("Judges"). The Defendants move for reconsideration of the Court's April 18, 2011 Memorandum Ruling and Order denying Defendant's Motion for Summary Judgment on Plaintiff, Veronica Glover's ("Glover") procedural due process claims. See Record Documents 95-96. The Defendants seek a ruling from this Court granting Defendants "judgment as a matter of law because an implied contract, i.e. termination only for cause, would be illegal, *ultra vires*, and unenforceable under Louisiana law." [Record Document 15 at 2]. In opposition, Plaintiff argues "(1) state law does not prohibit the judges from employing deputy clerks on a 'dismissal for cause' basis and (2) Glover has a property interest in employment regardless of whether she could be dismissed only for cause or 'at will.'" [Record Document 109 at 1]. For the reasons stated herein, Defendants Motion for Reconsideration [Record Document 105] shall be **GRANTED.**

**BACKGROUND**

Veronica Glover ("Glover") began working for the Shreveport City Court in 1998 as a deputy clerk in the criminal division. [Complaint at ¶6]. Glover alleges that on July 2, 2007 and July 17, 2007, she complained to the City of Shreveport Personnel Department that she was being discriminated against by Clerk of Court, Virginia Hester because of her race. [Complaint at ¶7]. Glover contends that the City Personnel Department declined to investigate and advised her to file her complaint with the Chief Judge of the Shreveport City Court, which she did on October 1, 2007. [Complaint at ¶8]. According to Glover, her complaints of discrimination prompted Virginia Hester, a Caucasian who was the Clerk of Court, to retaliate against her by: "mocking Glover . . . ; increasing Glover's work load to a level impossible to complete in the time allowed; micro-managing Glover's work; imposing conditions of employment upon Glover that were not imposed on her co-workers; soliciting complaints about Glover from employees and City Court patrons; threatening to terminate Glover's employment without cause; making derogatory statements to Glover about Glover for the purpose of causing Glover extreme emotional distress." [Complaint at ¶10]. Glover took time off of work under the Family Medical Leave Act in April 2008. [Complaint at ¶11]. Further, Glover alleges that after she returned to work in April 2008, Hester again harassed her. [Complaint at ¶11]. Glover contends this harassment culminated in her being terminated without cause. [Complaint at ¶¶11-12].

The incident that gave rise to Glover's discharge is recounted by Angela Clay ("Clay"), the co-worker who was verbally assaulted by Glover, in her deposition (the video tape was not presented to the Court for its review). See Record Document 55-6 at 86. According to Clay, she was standing in the fax/file room waiting for a fax and Glover came

in and reached in front of Clay. [Record Document 55-6 at 79]. Clay said to Glover that she needed "to say excuse me or something." [Record Document 55-6 at 79]. At that point the altercation began:

> Yeah. And you got to learn not to be so rude, because that was totally rude. And she [Glover] turns on her heels and say, bitch, you don't know who you fucking with, I'll whoop your ass. I'm like, whoa, you won't be whipping my ass. She say, you don't know who you fucking with. I'll whoop your ass. We'll tear this mother–I'm sorry. We'll tear this mother fucker up in here. We'll both catch a charge you'll lose your job.
>
> And, you know, I said this girl's crazy, to myself, you know, whatever. I said, yeah, and that's when I told her, you need to get out of my face, you know, just move and get out of my face, because I was trying to do my work. And that's when she said, bitch, your breath stink. Get your teeth fixed, bitch. Bitch, your breath stink. And she said that about, I don't know how many times, trying to taunt me I guess. And that's when I told her again, you know, you just need to shut up talking to me.
>
> So as I was trying, turning to leave out of the room to go put the fax material up, for Mr. Flanagan, she says something about your mammy, which is a very off color statement to use referring to someone's mom. Something about your mammy something. I don't know exactly what she said because at that point she really pissed me off.
>
> So she said your mammy something, I don't know what she said, and it kind of touched a button because my mom's deceased and a couple of days away from her birthday, and so I was pissed off at that time, so I did say something vulgar to her, and I know I go to say what I said, don't' want to say it but I know–I've been told I have to say it.
>
> And that's when I made the ugly comment of you can, I think I told her you can either eat out of my ass and out my pussy, I'm sorry
> . . .

> And then she said, bitch–you know, again, she repeated, bitch, you don't know who you fucking with. You don't know who you fucking with, get your mouth fixed, bitch.
>
> So I just shook her off at that point and went to my desk because it was time to go pretty much. And she still, she still mouthing something on about, I don't know what all she was saying then. You could just, she was just motioning with her body, saying craziness about, you don't know who you fucking with and you can take that to the bank and all kind of crazy nonsense she was saying.
> . . .
> So during the time I was trying to retrieve my faxes, a man came in and needed help. Well, Veronica was busy messing around with me, you know, trying to aggravate me or whatever she was trying to do, because I felt that she tried to draw me into an altercation, a physical altercation, and she thought she wanted that but she didn't. But anyway, I felt she was trying to draw me into that, and Christy, because Veronica was ignoring the guy at the counter, which she should not have done, got up to help the guy at the counter.

[Record Document 55-6 at 80-83].[1] After the altercation, Clay filed a complaint. Id. Hester investigated the incident and fired Glover. [Record Document 55-4 at 29]. Subsequent to that the four judges met, reviewed the tape of the incident and voted two (2) to two (2) to reinstate Glover. [Record Document 88-2 at 22]. Glover was not reinstated.

Glover alleges claims under Louisiana law and federal law. See Complaint and First Amended Complaint. Through the course of motion practice, Plaintiff's claims against the Shreveport City Court and the City of Shreveport were dismissed. See Record Documents 26, 97 and 98. Plaintiff's claims for "discrimination and retaliation pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII, the Family Medical Leave Act and Louisiana state law"

---

[1]The Court notes with a passing nostalgia the days when civility reigned and such vulgar language was never uttered in polite company or even heated discussions. Alas, it seems those days have long since past.

were dismissed as well.  See Record Documents 95 and 96.  The only claims remaining for trial are Plaintiff's procedural due process claims (federal and state).

## SUMMARY JUDGMENT

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

"Glover alleges her employment was terminated in violation of a state law applicable to procedural due process, La. Const. art I, § 2 and the Fourteenth Amendment to the

---

[2] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

United States Constitution." [Record Document 54]. Glover contends "the Defendant Judges and Hester violated constitutional rights affecting Glover's continued employment as a deputy clerk of the City Court by failing to provide Glover, prior to her termination, an explanation of the evidence against her and an opportunity to defend herself against the charge that she was involved in an altercation with Ms. Clay." [Record Document 54 at 2]. Plaintiff does not contest the fact that she is an unclassified state employee. See Record Document 72 at 5. Instead, Plaintiff argues, "Louisiana clearly recognizes a protected property interest in public employment arising from a mutual agreement between the employer and the employee." [Record Document 72].

To state a Fourteenth Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001). To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law . . . " Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Plaintiff and Defendants cite to Tolliver v. Concordia Water Works District No. 1, 735 So.2d 680 (La.App. 3d Cir.1999), as support for their respective position on the due process issue that Glover had an expressed or implied right to continue her employment unless she violated her employer's rules and regulations. See Record Documents 54 and 55. The plaintiff in Tolliver argued that he had a property interest arising out of rules or mutually explicit understandings of regulations, policies, and procedures of his employer. Tolliver, 735 So.2d at 683. The Court in Tolliver examined the implication of Louisiana's

presumption of "at-will" employment against the United States Supreme Court decision in Board of Regents v. Roth, 408 U .S. 564, 92 S.Ct. 2701 (1972), which provides that due process protection of property interests may be created by an independent source, such as state laws, or by understandings that secure certain benefits and that support a claim of entitlement to those benefits. See Roth, 408 U.S. at 577.

Louisiana defines "at-will" employment as that which is terminable at the will of either the employer or the employee. Tolliver, 735 So.2d at 682; citing to Williams, 416 So.2d at 638. "Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." Id.

The Court in Tolliver recognized that in some instances the facts will demonstrate that a particular employer adopted rules and regulations that caused its employees to expect continued employment absent certain transgressions. See Tolliver, 735 So.2d at 684. However, the Tolliver Court noted that this expectation must be more than unilateral; it must be mutual between the employee and the employer to create a protected property interest. See id.

> An employee's abstract concern or desire to be treated "fairly" and "reasonably" in being terminated will not defeat summary dismissal of his complaint. Instead, he must present some evidence to overcome the "at will" presumption, i.e., evidence tending to show the employer intended, expressly or impliedly, by adoption of certain rules, regulations, or policies to grant him the right to continued employment subject to certain conditions or certain specific understandings exist[ing] between he and the employer sufficient to cause him to reasonably expect such employment.

Id.

As this Court previously found:

> Both parties agree "termination is at the will of the appointing authority, provided no restraint has been placed on his power." [Record Document 88 at 7]. The parties agree that Hester was delegated the power to hire and fire employees. Id. Thus, she was the appointing authority. Id. However, Plaintiff contends the Judges "conditioned that authority upon a requirement that dismissal be only for cause." Id. at 8.

[Record Document 95 at 7]. In the end, this Court concluded "taking the Judges' statements, Smith's statement and Lundt's e-mail in consideration with the City Court of Shreveport Employee Handbook, the Court finds that a genuine dispute of material fact exists as to whether or not a mutual understanding existed that creates a for cause requirement for dismissal."

Upon reconsideration, the Court finds that the existence of such a dispute is not determinative of Glover's claims. Instead, as a matter of law, Glover's procedural due process claims (state and federal) must fail.

In Louisiana, "the sources of law are legislation and custom." LA. CIV. CODE ANN. art. 1 (2010). "Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. *Custom may not abrogate legislation*." LA. CIV. CODE ANN. art. 3 (2010) (emphasis added). According to the general legislative provision that establishes the deputy clerk position in the city and municipal courts, "[t]he judge may appoint one or more deputy clerks to serve *at the pleasure of the judge*. Deputy clerks shall have the same qualifications, shall post the same bond, and have the same powers and duties as the clerk." LA. REV. STAT. ANN. § 13:1887 (emphasis added). As this general statute demonstrates, deputy clerks are "at-will" employees. Further in that same chapter, the legislature provided miscellaneous provisions for the various city courts in the

state of Louisiana. Specifically for Shreveport City Court, the legislature stated "[t]he judges of the city court of Shreveport shall appoint one clerk for the civil section of the court, one clerk for the criminal section of the court, and not less than four deputy clerks. Each clerk shall keep his respective minutes and dockets." LA. REV. STAT. ANN. § 13:2086. Glover argues that "R.S. 13:2086 applies specifically to the Shreveport City Court and supersedes R.S. 13:1887." [Record Document 109 at 3-4]. According to Glover, "[b]ecause the statute specific to the Shreveport City Court does not contain the restriction that the clerk and deputy clerks 'serve at the pleasure of' the judges, the judges are free to deviate from 'at will' employment and impose a 'cause' requirement." [Record Document 109 at 4]. The Court disagrees. The Court does not find that LA. REV. STAT. ANN. § 13:2086 intended nor effected a change of law on the "at-will" issue. LA. REV. STAT. ANN. § 13:2086 was merely a miscellaneous provision establishing the parameters of the Shreveport City Court not changing the status of deputy clerks. In further support of this finding, when Glover began working for the City Court of Shreveport she signed an "Employee Acknowledgment of Receipt" which acknowledged that she had received a copy of the Shreveport City Court Employee Handbook. [Record Document 55-5 at 76]. This acknowledgment stated:

> I understand that nothing in this document should be construed as creating any entitlement to any process described or in any way changing the "at-will" nature of non-classified employment. I further understand that I am free to resign from my position with the Court at any time, just as the Court is able to terminate my employment at any time. I understand that this is not a contract of employment.

[Record Document 55-5 at 76]. Shreveport City Court established a formal policy in line with state law that deputy clerks were "at-will" employees. Glover has presented nothing formal to contradict that policy.

Instead, Glover relies on a custom of the Shreveport City Court in which employees were typically only terminated for cause. The testimony of the Judges and an e-mail from Joseph Lundt, an employee in the Personnel Department of the City of Shreveport, support this custom. See Record Document 54-3 at 2, Record Document 54-3 at 5 and Record Document 88-2 at 32. The Court does not doubt that the Shreveport City Court established a custom of requiring cause for termination. However, despite this finding, Glover's procedural due process claims must fail as a matter of law.

In Louisiana, legislation will always trump custom. LA. CIV. CODE ANN. art. 3 (2010). LA. REV. STAT. ANN. § 13:1887 establishes an "at-will" presumption and the formal rules of the Shreveport City Court conform to that established principle. Where the custom of the Shreveport City Court clashes with the established legislation and formal rules, the custom must give way. Similarly, federal jurisprudence acknowledges the limitations of custom as a basis for a procedural due process claim. According to the Fifth Circuit,

> this court has long held that, "when formal rules and informal understandings conflict, the formal rules control. In other words, when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules." Staheli v. Univ. of Miss., 854 F.2d 121, 125 (5th Cir.1988). See also Batterton v. Tex. Gen. Land Office, 783 F.2d 1220, 1224 (5th Cir.1986) ("To say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest in one's job.").

Watson v. North Panola School Dist., 188 Fed. Appx. 291, 294 (5th Cir. 2006).

In this instance, the legal presumption is that deputy clerks, which Glover was one at the time of her termination, are "at-will" employees. Glover even concedes that she is an "at-will" employee, but the custom of the Shreveport City Court was to only terminate

employees for cause. Consequently, Glover's claim must fail as a matter of law. Simply put, custom cannot trump the legislative and jurisprudential presumption of "at-will" employment.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Reconsideration [Record Document 105] be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment be and is hereby **GRANTED** and all of Plaintiff's remaining claims are **DISMISSED**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 6th day of June, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE